**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Fieldwood Energy III LLC, *et al.*,[1] | Case No. 20-33948 (MI) |
| Post-Effective Date Debtors. | |

| | |
|---|---|
| Fieldwood Energy III LLC, | |
| Plaintiff, | |
| vs. | Adv. No. **Refer to Summons** |
| Genesis Offshore Holdings, LLC, | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS
PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550**

Fieldwood Energy III LLC,  one of the above-captioned reorganized debtors (collectively,

the "Debtors," as applicable, and after the effective date of their plan of reorganization, the

"Reorganized Debtors"), by and through its undersigned counsel, files this complaint (the

"Complaint") to avoid and recover transfers against Genesis Offshore Holdings, LLC (the

---

[1] The Post-Effective Date Debtors, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, as applicable, are: Fieldwood Energy III LLC (6778); Fieldwood Energy Offshore LLC (4494), Fieldwood Energy Inc. (4991), GOM Shelf LLC (8107), and FW GOM Pipeline, Inc. (8440). Fieldwood Energy III LLC, Fieldwood Energy Offshore LLC, and Fieldwood Energy Inc. are managed and operated by the Plan Administrator, whose primary mailing address is 16255 Ventura Blvd., Suite 440, Encino, CA, 91436, C/O of Province LLC. GOM Shelf LLC and FW GOM Pipeline, Inc. (collectively, the "Post-Effective Date FWE I Subsidiaries") are managed and operated by Jon Graham, as sole manager of each Post-Effective Date FWE I Subsidiary. The Debtors in the other nine pending chapter 11 cases (which continue to be jointly administered with the cases of the Post-Effective Date Debtors), each of which have either been dissolved or merged into other entities as of the Effective Date, consist of the following: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).

"Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property of the Debtors that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Debtors pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). The underlying chapter 11 bankruptcy cases are captioned *In re Fieldwood Energy III LLC, et al.,* Case No. 20-33948 (MI).

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In addition, Plaintiff confirms its consent, pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2

4.      Venue of the Debtors' chapter 11 cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and legal predicates for the relief sought herein are sections 547, 548, and 550 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

## PROCEDURAL BACKGROUND

6.      On August 3, 2020, and August 4, 2020 (the "Petition Dates"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      On August 4, 2020, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 17].[2]

8.      On June 25, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and (II) Granting Related Relief* [Docket No. 1751] (the "Confirmation Order") confirming, as modified therein, the *Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 1742] (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, including at Docket No. 2008, the "Plan").

9.      The effective date of the Plan (the "Effective Date") occurred on August 27, 2021. [Docket No. 2016]. [Docket No. 1562].  As a result of certain transactions consummated on the Effective Date pursuant to the Plan and Confirmation Order, nine of the fourteen Debtors have either been dissolved or merged into other entities as of the Effective Date and five Post-Effective

---

[2] All docket items referenced are from Case No. 20-33948, under which the Debtors' bankruptcy cases are jointly administered.

Date Debtors remain: GOM Shelf LLC, FW GOM Pipeline, Inc., Fieldwood Energy III LLC,[3] Fieldwood Energy Inc., and Fieldwood Energy Offshore LLC. The case caption of the main case was amended to reflect these changes to the Debtors' corporate structure following the occurrence of the Effective Date. [Docket No. 2060].

10.     Pursuant to paragraph 11 of the Confirmation Order and section 10.2 of the Plan, as of the Effective Date, and pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets[4] of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors or the Post-Effective Date Debtors during the Chapter 11 Cases or under or in connection with the Plan shall vest in each respective Post-Effective Date Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests (other than any and all Liens securing the FLFO Claims, the obligations under the First Lien Exit Facility, or all Liens securing the FLTL Claims that attach to the Credit Bid Acquired Interests and are deemed assigned to the Second Lien Exit Facility Agent upon the Effective Date to secure the obligations under the Second Lien Exit Facility). [Docket No. 2008].

11.     Pursuant to section 4.7 of the Plan and Article II of the *Disclosure Statement for Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "Disclosure Statement")[5] General Unsecured Claims, as well as other certain classes of Claims, comprise impaired classes of creditors and are not expected to be paid in full.

---

[3] As contemplated by the Plan, Fieldwood Energy LLC changed its name to Fieldwood Energy III LLC following a Divisive Merger pursuant to the Initial Plan of Merger.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and/or Confirmation Order.

[5] Docket No. 1285.

## THE PARTIES

12.     Pursuant to section 10.11(a) of the Plan, the Post-Effective Date Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Accordingly, under the Plan and Confirmation Order, Plaintiff is authorized and has standing, among other things, to prosecute and settle all Causes of Action retained[6] on behalf of the Debtors, including this avoidance action under Chapter 5 of the Bankruptcy Code.

13.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided petroleum services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 919 Milam, Suite 2100, Houston, Texas 77002. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

14.     As more fully discussed in the Disclosure Statement, the Debtors were one of the largest oil and gas exploration and production companies in the Gulf of Mexico. The Debtors operated an energy business focused on the acquisition, development, exploration, and production of oil and natural gas properties. As of the Petition Date, the Debtors had over 300 operated

---

[6] *See Amended Plan Supplement in Connection with Fourth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "First Amended Plan Supplement"), [Docket No. 1562-1, Exhibit C] (Schedule of Retained Causes of Action)

platforms spread across more than 1.5 million gross acres. The Debtors employed over 600 employees across their offices in Houston, Lafayette, and offshore, in addition to over 500 contract personnel.

15.     Prior to the Petition Date, the Debtors, as gas exploration and production companies, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services. The Debtors also regularly paid for services used to facilitate its business.

16.     The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date.[7] The Debtors proactively took a number of steps before filing the chapter 11 Cases in an effort to deleverage their balance sheets, bolster liquidity, address near-term interest payments, and maximize value for stakeholders. The Debtors, however, continued to face a challenging commodity price environment, which constrained their liquidity and affected operations. Ultimately, the precipitous decline in oil prices from the combined effect of the COVID-19 pandemic and general deterioration of commodity prices forced the Debtors to pursue restructuring transactions.

17.     As of the Petition Dates, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[8] Under the Cash Management System, disbursements were primarily

---

[7] A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in the Disclosure Statement and are incorporated herein by reference.

[8] *See Emergency Motion Of Debtors For Interim and Final Orders (I) Authorizing Debtors To (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms, (C) Continue Intercompany Arrangements, and (D) Continue Utilizing Corporate Credit Cards; And (II) Granting Related Relief* (the "Cash Management Motion") [Docket No. 6]. The further details concerning the Cash Management System contained in the Cash Management Motion are incorporated herein by reference.

made from the main operating account held by Debtor Fieldwood Energy, LLC ("Fieldwood Energy"). The Debtors separately paid royalty obligations from a revenue account also held Fieldwood Energy. In the ordinary course of business, Fieldwood Energy made payments and disbursements on behalf of the other Debtors. In those instances, the Debtors tracked all intercompany claims created in their centralized accounting system. The Debtors maintained records of all transactions processed through their Cash Management System.

18.     During the ninety (90) days before the Petition Date, that is between May 5, 2020 and August 3, 2020 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

19.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

20.     One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $52,953.42 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

21.     Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

22.     Prior to filing this Complaint, and as part of the due diligence requirements under the statutes applicable to this action, Plaintiff undertook a review of the information and data underlying this avoidance action, which review included:

a.   A review and identification of the entities released by the Debtors pursuant to section 10.7 of the Plan;

b.   A review and identification of the entities with assumed and assigned contracts pursuant to Exhibit D to the *Sixth Amended Plan Supplement in Connection with Modified Eighth Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [Docket No. 2013];

c.   A review and identification of those entities who were deemed "holders of Unsecured Trade Claims" as defined in the Plan and therefore released under section 10.11(b) of the Plan and Exhibit C of the First Amended Plan Supplement (Schedule of Retained Causes of Action);

d.   A review of the claims docket to identify, to the best of Plaintiff's ability and upon information and belief, those holders of General Unsecured Claims as defined in the Plan and therefore released under section 10.11(b) of the Plan and Exhibit C of the First Amended Plan Supplement (Schedule of Retained Causes of Action);

e.   A review of the accounts payable information Plaintiff was able to obtain to confirm, to the best of Plaintiff's ability and upon information and belief, the existence of antecedent debt and payment date data; and

8

f.   A review of other certain miscellaneous items and information that may have made the pursuit of a preference unviable.

23.     Additionally, as part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has certain invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

24.     Based upon Plaintiff performing its own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), including the review and evaluation described in the two immediately preceding paragraphs, Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

25.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"),

that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

26.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

27.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtors identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $52,953.42.

28.     Each Transfer was made from Debtors as identified on Exhibit A, constituted a transfer of an interest in property of the transferring Debtors as identified on Exhibit A.

29.     Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtors identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtors identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

30.     Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors identified on Exhibit A to Defendant.

31.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtors as set forth on Exhibit A hereto.

32.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

33.     Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

34.     As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

35.     In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

<u>**Second Claim for Relief**</u>
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

36.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

37.     To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding intercompany receivable recorded concerning the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtors making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

11

A.      The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.      The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C.      The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

38.      Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

### Third Claim for Relief
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

39.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

40.      Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

41.       Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

42.      Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A.    On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees; and

B.    Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 3, 2022

**ASK LLP**

By: /s/ *Kara E. Casteel*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3846
Fax: (651) 406-9676
Email: kcasteel@askllp.com

*Attorneys for Plaintiff*

13